IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MELISSA JO VIRGIN,

                 Plaintiff,

v.

NANCY A. BERRYHILL,
  Acting Commissioner, Social Security Administration,

                 Defendant.

OPINION and ORDER

18-cv-85-jdp

---

Plaintiff Melissa Jo Virgin, who is proceeding pro se, seeks judicial review of a final decision denying her claim for disability benefits under the Social Security Act. 41 U.S.C. § 405(g). Virgin contends that she has been disabled since February 2013 because of numerous impairments, including carpal tunnel syndrome, obesity, bipolar disorder, and chronic pain in her spine, knee, and hip, all of which were aggravated after a car accident and fall. The administrative law judge concluded that even though Virgin suffers from various physical and mental impairments, she is not disabled because she retains the capacity to perform a significant number of jobs in the national economy, including production worker, general office clerk, and inspector. For the reasons discussed below, I am upholding the administrative law judge's decision.

BACKGROUND

Virgin filed for disability benefits in February 2013. She was 37 years old at the time. After her application and request for reconsideration were denied, she requested a hearing before an administrative law judge (ALJ). AR 48–59. A hearing was held in Madison,

Wisconsin, before ALJ Debra Meachum on September 15, 2016. AR 1316–51. Virgin was represented by counsel at the hearing.

Virgin testified that she and her two children had been living with her mother since 2014 because she had been evicted. AR 1324. Virgin performs a limited number of household tasks, including making one meal a day, doing laundry once a week, and cleaning occasionally, but her mother handles most of the cleaning. *Id*. Virgin testified that she does physical therapy at home every day, AR 1325, works about 15 hours a week at a data entry job through the Department of Workforce Development, AR 1322, attends medical appointments about once a week, AR 1325, and enjoys puzzles and coloring. AR 1324. She recently had successful carpal tunnel release surgery. AR 1335.

Virgin testified that she can work only three days a week without becoming too tired. AR 1332. When she is not working, she spends most of her time watching television in a recliner. AR 1331. She testified that her pain, which is most severe in her tailbone, makes it difficult to lean back, so she has to lean forward while she sits. AR 1331. She estimated that she can stand for about 15 minutes before her back starts hurting. *Id.* Pain medications have been helpful in controlling pain, but they make her drowsy and irritated. AR 1327–28. Injections in her tailbone and osteopathic manipulation have also been effective in alleviating her pain. AR 1328–29, 1331.

As for her mental health, Virgin testified that she has bipolar disorder and that her medication was not working well at the time of the hearing. AR 1328. During her manic phases, she has difficulty sleeping and spends her nights tossing and turning. AR 1334. She sees a therapist every other week for pain management and relaxation techniques. AR 1333.

A vocational expert also testified at the hearing, responding to multiple hypotheticals posed by the ALJ. AR 1336–1351.

The ALJ issued a written decision finding that Virgin was not disabled from February 2013 to December 14, 2016, the date of the decision. AR 13–30. The ALJ found that Virgin was insured through December 31, 2020, and that she had not engaged in substantial gainful activity since her alleged onset date of February 26, 2013. AR 15. The ALJ next found that Virgin's spine, knee, and pain disorders, obesity, carpal tunnel syndrome, and affective disorder were severe impairments, AR 15, but that none of the impairments met or medically equaled the severity of a listed impairment. AR 16.

In considering Virgin's mental impairments, the ALJ found that Virgin has mild limitations in activities of daily living; moderate difficulties in social functioning; moderate problems sustaining concentration, persistence, or pace; and has not experienced any episodes of decompensation. AR 17. Virgin's training records from the Department of Workforce Development stated that Virgin is prompt, reliable, able to follow rules, careful, helpful, friendly, outgoing, flexible, accepts supervision and feedback, interacts appropriately with others, and can perform multi-step tasks. *Id.*; AR 245–52, 271. The ALJ noted that although Virgin's boyfriend provided a function report stating that Virgin did not handle stress well, AR 141, Virgin testified that she was "pretty good" at "going with the flow" and handling stress. AR 17.

The ALJ found that Virgin had the residual functional capacity to perform sedentary work with some additional limitations. AR 18. The ALJ concluded that although Virgin's "medically determinable impairments, in combination, could reasonably be expected to cause" her alleged symptoms of depression and pain, her subjective complaints about the intensity,

3

persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." AR 19. The ALJ noted that Virgin's "appearance and demeanor" at the hearing were "generally unpersuasive," and that Virgin gave vague and inconsistent statements and displayed no evidence of pain or discomfort while testifying at the hour-long hearing. AR 24. The ALJ went on to provide a thorough discussion of Virgin's medical records, pointing out several inconsistencies and contradictions in the records.

For example, the ALJ noted that Virgin told her medical providers on several occasions that she had difficulty sitting for long periods of time, but on other occasions, Virgin testified that she would like a job where she could sit, that her medication controlled her pain, and that sitting relieved her pain. AR 19, 330, 339. Sometimes Virgin reported that she could walk one mile before needing to rest, while at other times she reported that she could walk only 100 feet. *Id.* Medical records showed that Virgin reported having trouble lifting five pounds, while at other times she stated that she could lift up to 50 pounds. As for controlling her pain, Virgin sometimes reported that nothing helped her pain, but at other appointments she stated that medication, physical therapy, injections, and osteopathic manipulation helped relieve her pain. *Id.* There were also several inconsistencies in the record regarding Virgin's ongoing marijuana use. AR 24.

As for diagnostic tests, x-ray results and other imaging in the records revealed minimal findings, showing only minimal degenerative changes in Virgin's joints and spine. AR 20, 596 (doctor reviewing MRI and other imaging in March 2016 noted that "there are really no findings other than facet arthropathy on MRI of lumbar spine" and questioned whether continued narcotics use was appropriate). The ALJ noted that most of Virgin's physical exams were generally unremarkable and showed only some tenderness or reduced range of motion,

4

but nothing significant enough to support Virgin's subjective reports of overwhelming pain. AR 21, 374, 779. As for her mental health, the ALJ found that although Virgin has a history of depression, many of her mental health examinations were unremarkable and she had generally been able to control her depression through medication and counseling. AR 23.

The ALJ also found that Virgin's testimony about her activities of daily living and general functioning was inconsistent. *Id.* She told some treatment providers that she was living with her mother because she was so incapacitated by pain that she could not care for her children or perform household chores, AR 364, but she told other providers and the Division of Vocational Rehabilitation that she lived with her mother because she was evicted from her home due to financial problems and that she spent her days performing household tasks and taking care of her children and grandmother. AR 23, 380. There was also some evidence that Virgin had only limited problems with personal care, household chores, grocery shopping, taking care of her cats, making dinner, and performing work that nearly rose to the level of substantial gainful activity. AR 24.

The ALJ considered opinions from several medical providers. State agency medical experts who reviewed the evidence concluded that Virgin did not have a severe mental impairment and could perform a range of light work. AR 25, 31–45. Upon reconsideration, state agency medical experts concluded that Virgin's affective disorder caused some work-related limitations, including moderate limitations in social functioning and in concentration, persistence, or pace, and that Virgin could perform a range of sedentary unskilled work. AR 25, 389–400. The ALJ gave little weight to the initial assessments, but gave partial weight to the subsequent assessments, concluding that the expanded record supported greater nonexertional limitations than those assessed by the state agency. AR 25.

The ALJ gave significant weight to the opinions of Dr. Douglas Varvil-Weld, who had performed a psychological evaluation of Virgin, and Dr. Kurt Reintjes, who had performed a physical exam, because their opinions were supported by the medical records. *Id.* The ALJ gave some weight to the opinion of Dr. Amy Bourne, Virgin's treating psychiatrist, who assessed Virgin as having few limitations related to her mental health but significant limitations from her chronic pain. AR 1302–07. The ALJ concluded that Virgin had more severe mental limitations than those identified by Bourne, but that Bourne's assessment of Virgin's physical limitations fell outside of Bourne's area of expertise. AR 25. Similarly, the ALJ rejected the opinion of Virgin's treating therapist, counselor Pamela Garrett, who gave the opinion that Virgin was limited by her chronic pain and physical impairments. AR 27, 1309–14. The ALJ noted that because Garrett had provided no treatment for Virgin's physical problems, Garrett was not in a position to evaluate how those physical problems limited Virgin's ability to work. AR 27.

Virgin's physical medicine and rehabilitation doctor, Dr. Sara Christensen Holz, gave the opinion that Virgin's continuous pain and the side effects from her medication would limit her to less than sedentary work. AR 27, 1287–91. The ALJ found that Holz's opinion was not supported by the medical records or reports of Virgin's daily activities, including Holz's own treatment notes, which indicated that Virgin was generally functional throughout the day. AR 27. The ALJ also found that Holz's opinion was undermined by the opinions of other treating physicians who questioned whether Virgin's physical condition warranted the extended use of opioid pain medication that Holz had prescribed. AR 25.

After considering the medical evidence, Virgin's testimony, and the medical opinions, the ALJ concluded that Virgin could do a restricted range of sedentary work. The ALJ concluded

that Virgin could not perform her past relevant work, but that she was not disabled because, based on the vocational expert's testimony, she could perform jobs that exist in significant numbers in the national economy, including production worker, general office clerk, inspector, and sorter. AR 28–29.

After the Appeals Council denied Virgin's request for review, she filed this appeal on her own behalf.

ANALYSIS

In reviewing the ALJ's decision, my role is to determine whether the decision denying benefits is supported by "substantial evidence." 42 U.S.C. § 405(g); *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). "The administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Id. See also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Virgin's mother drafted a brief in support of Virgin's appeal, arguing that the ALJ erred by: (1) concluding that Virgin has only mild limitations in her activities of daily living; (2) failing to obtain a statement from Virgin's mother about Virgin's deplorable living conditions prior to Virgin moving in with her mother; (3) giving greater weight to the assessment of Dr. Kurt Reinjtes than to the opinions of Dr. Sara Christensen Holz; (4) failing to recognize the severity of Virgin's bipolar disorder; (5) failing to recognize that Virgin's appearance,

7

demeanor, and inconsistent statements could be attributed to her use of pain medication and her bipolar disorder; (6) accepting a doctor's opinion that Virgin was dependent on cannabis; and (7) stating that Virgin had good sleep quality. Virgin's arguments are not well-developed and she cites no evidence from the record to support them. Because she is proceeding without counsel, I have read her submissions generously. Even so, none of Virgin's arguments provide a basis for remand.

Virgin's first, second, and third arguments are related. She contends that she has more than "mild" limitations in daily living, and specifically, she contends that the ALJ failed to consider how her physical impairments limit her activities of daily living and caused her to live in "deplorable" conditions until she moved in with her mother. But Virgin's arguments are misplaced. Virgin is challenging the specific section of the ALJ's decision that, according to applicable regulations, is intended to evaluate solely how Virgin's *mental impairments* affect her activities of daily living. AR 17; 20 C.F.R. § 404.1520a ("Evaluation of mental impairments."). This particular section of the ALJ's decision was not intended to account for the effect of Virgin's physical impairments.

The ALJ addressed Virgin's physical limitations in other sections of her decision. The ALJ discounted Virgin's subjective complaints regarding her physical limitations because she did not think the medical records supported them. For example, the ALJ found it significant that there were no imaging or other diagnostic tests that explained the chronic pain Virgin reported, and that some of Virgin's treating providers questioned whether her condition warranted the continued prescription of opioid pain medications. AR 324, 330, 367, 369, 371, 605, 658. The ALJ also noted that records from Virgin's physical examinations were generally unremarkable and identified no impairments that would cause the level of pain she described.

For example, the ALJ found it significant that Virgin underwent a physical consultative exam with Dr. Kurt Reintjes in November 2013, at which she reported she was in constant 9/10 pain in her lower spine and that nothing helped. AR 20. But upon examination, Virgin was in no acute distress and was able to demonstrate full movements requested during the examination. *Id.*

Virgin's only challenge to the ALJ's analysis of the medical records is her argument that the ALJ improperly discounted the opinion of Virgin's treating physician, Dr. Sara Christensen Holz, in favor of the opinion provided by Dr. Kurt Reinjtes, who had conducted only a single examination.[1] But Virgin's argument that the ALJ weighed the medical opinions improperly is not persuasive. An ALJ may discount a treating physician's opinion if it is internally inconsistent or inconsistent with other substantial evidence, so long as the ALJ articulates her reasons for giving the opinion less weight. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). In this instance, the ALJ adequately explained that she was discounting Dr. Holz's opinion because Holz had been treating Virgin only a short time and her conclusions were inconsistent with Holz's own treatment notes and the medical records. Virgin has not pointed to any specific medical evidence that contradicts the ALJ's conclusion. Additionally, Virgin's assertion that she was able to perform well during Dr. Reinjtes's physical examination because she was taking pain medication does not undermine the ALJ's acceptance of Reinjtes's conclusions. Virgin's ability to function while taking pain medication is relevant to the ALJ's analysis of how her impairments affect her ability to work.

---

[1] Although the commissioner assumes that Virgin is challenging the ALJ's analysis of Dr. Amy Bourne's opinion, Virgin's argument appears to relate to the opinion of Dr. Holz. Both Dr. Reinjtes and Dr. Holz provided opinions about Virgin's physical impairments.

Virgin's fourth and fifth arguments concern the ALJ's analysis of her bipolar disorder. She contends that the ALJ failed to recognize the severity of her bipolar disorder and failed to consider whether her bipolar disorder or use of strong pain medication caused or contributed to her affect and demeanor at the hearing and to the inconsistent statements found throughout the medical records. But the ALJ included a thorough discussion of Virgin's mental health treatment records, noting that although Virgin had been diagnosed with mental health disorders, her symptoms were generally controlled with medication and therapy. AR 22, 328–87. The ALJ also pointed to numerous assessments from the Department of Workforce Development that showed that Virgin excelled in the workplace despite her mental impairments. Additionally, neither Virgin nor her mental health treatment providers identified any significant limitations attributable to her mental health. AR 23. Both Virgin's treating psychiatrist, Dr. Amy Bourne, and Virgin's therapist, Pamela Garrett, gave the opinion that Virgin's physical issues caused her the most limitations. AR 1302–07, 1309–14. Virgin has cited no evidence in the record to undermine these findings, although it is her burden to do so. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports her claims of disability.").

I am also not persuaded by Virgin's argument that the ALJ failed to consider how Virgin's impairments and medicated state may have affected her demeanor or caused her to make inconsistent statements. The ALJ cited dozens of inconsistent statements made by Virgin throughout the medical records, ranging from Virgin's statements about her pain and ability to function, to her statements about her drug use and living situation. Virgin cites no medical or other evidence suggesting that all or even many of these inconsistencies can be attributed to her bipolar disorder or use of pain medications. Additionally, in concluding that Virgin is not

10

disabled, the ALJ did not rely solely on Virgin's inconsistent statements or her demeanor. The ALJ provided a thorough discussion of Virgin's medical treatment history and explained why she did not think the medical records supported Virgin's subjective complaints. As discussed above, Virgin has not challenged the ALJ's analysis of the medical records.

Virgin's sixth argument is that the ALJ stated incorrectly that she was dependent on cannabis, without acknowledging that Virgin used cannabis to deal with extreme nausea and pain. Virgin suggests that the ALJ should not have made that finding without evidence that Virgin had tested positive for cannabis. But the ALJ did not deny Virgin's claim because she thought Virgin had a marijuana addiction. The ALJ did not apply 20 C.F.R. § 404.1535, which describes the procedure for denying an application for benefits because drug addiction or alcoholism is a material contributor to disability. Instead, the ALJ merely noted that a doctor had diagnosed Virgin with likely cannabis dependence and that several medical records noted Virgin's marijuana use. AR 22. The ALJ appeared to be more concerned with the numerous inconsistencies throughout the medical records regarding Virgin's self-reported marijuana use, rather than her use itself. The ALJ concluded that Virgin's inconsistent statements regarding her marijuana use "detract[ed] from the veracity of [Virgin's] allegations." AR 24. This inference was reasonable and supported by numerous notes in the records. AR 321, 367, 371, 379, 604, 614, 1151. *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) ("The ALJ properly took these inconsistencies [regarding when claimant stopped smoking and drinking, whether claimant used marijuana, and why claimant left her most recent job] into consideration when concluding that [claimant's] subjective complaints of disabling limitations were 'not entirely credible.'").

Virgin's seventh and final argument is that the ALJ stated falsely that she has good sleep quality, when Virgin actually spends much of the day in bed and was diagnosed with extreme sleep apnea in November 2017. The ALJ's decision mentions Virgin's sleep quality only in passing, in the context of repeating what Virgin had told a treatment provider. AR 22. The ALJ did not err in repeating what Virgin had self-reported. Additionally, Virgin's November 2017 diagnosis of sleep apnea cannot be a basis for reversal of the ALJ's decision because it postdates the decision. *See Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (denying request to remand for consideration of medical records post-dating ALJ's decision). If Virgin believes that her conditions have worsened or that she has developed new impairments that are disabling, she can file a new application for disability benefits relating to the period after the ALJ's decision.

In sum, Virgin has failed to present any persuasive arguments showing that the ALJ's decision was unsupported by substantial evidence and has failed to identify any reversible error in the ALJ's decision. Therefore, I will affirm the agency's decision denying her benefits and I will dismiss this appeal.

ORDER

IT IS ORDERED that that the decision of defendant Nancy A. Berryhill, acting commissioner of the Social Security Administration, denying benefits to plaintiff Melissa Jo

Virgin is AFFIRMED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered February 25, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge